**FILED
CLERK**

10:47 am, Sep 18, 2019

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SEAN FINNEGAN,

                Plaintiff,

        v.

LONG ISLAND POWER AUTHORITY, NATIONAL
GRID ELECTRIC SERVICES, LLC, NATIONAL
GRID USA SERVICE COMPANY, INC., NATIONAL
GRID SERVICES, INC., PSEG LONG ISLAND LLC
(a subsidiary of Public Service Enterprise group, Inc.),
INCORPORATED VILLAGE OF LAWRENCE,
TOWN OF HEMPSTEAD, COUNTY OF NASSAU,
VERIZON NEW YORK, INC., CSC HOLDINGS,
LLC, CABLEVISIONS SYSTEMS LONG ISLAND
CORPORATION, ASPLUNDH TREE EXPERT, CO.,
SAMUEL SHORE, TRACY SHORE, and
ALTICE USA, INC.,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CV-4424 (SJF) (ARL)

FEUERSTEIN, District Judge:

      Plaintiff Sean Finnegan ("Plaintiff" or "Finnegan") commenced this action asserting personal injury claims against Defendants arising from an accident on September 6, 2016. According to the complaint, Finnegan on that date was lawfully riding his motorcycle when he "struck a downed, low hanging power line (wire), cable, telephone line (wire) or similar wire which was strewn across Meadow Lane" in the Village of Lawrence, Town of Hempstead, County of Nassau, and State of New York. Complaint ("Compl."), ¶1, DE [1]. Compl. ¶1. The wire caused him to crash into a power pole, causing him severe personal injuries. *Id.* Finnegan, who was 39 years old at the time of the accident, is "totally disabled and unable to return to work as an ironworker." *Id.*

Finnegan alleges that he is a "citizen of the State of Vermont residing at 19 Rist Road, Wilmington, Vermont 05363." Compl. ¶2. According to the complaint, the defendants all conduct business in New York, have a principal place of business in New York, and/or are citizens of New York, Delaware, Massachusetts, Pennsylvania, and New Jersey. *Id.* ¶¶3-27. The sole basis for jurisdiction alleged in the complaint is diversity of citizenship pursuant to 28 U.S.C. §1332. Defendants Long Island Power Authority ("LIPA") and PSEG Long Island LLC ("PSEG") (collectively, the "Moving Defendants") seek to dismiss the complaint pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, claiming that during Finnegan's deposition, facts were adduced that establish that he was a citizen of New York, not Vermont, at the time the complaint was filed on July 26, 2017, and therefore this Court lacks subject matter jurisdiction over the case. *See* Motion, DE [74]. Plaintiff opposes the motion. For the reasons set forth below, the motion is granted.

## I. LEGAL STANDARDS

### A. Judgment on the Pleadings

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Although a lack of subject matter jurisdiction may be raised on a pre-answer motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Rule 12(h)(3) demands that an action be dismissed "if the court determines at any time that it lacks subject-matter jurisdiction." FED. R. CIV. P. 12 (h)(3). For purposes of analysis, "[e]xcept for the pre-answer limitation on Rule 12(b)(1) motions, the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same

2

standards are applicable to both types of motions." *Greystone Bank v. Tavarez*, No. 09–CV–5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010).

While the Court on a motion to dismiss typically treats the factual allegations of the complaint as true and makes inferences in plaintiff's favor, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515, 45 S. Ct. 145, 69 L. Ed. 413 (1925)). Outside the allegations set forth in the complaint, a district court addressing a motion for lack of subject matter jurisdiction may "consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (noting that where "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (quotation marks and citation omitted)); *Makarova,* 201 F.3d at 113 (the court "may refer to evidence outside the pleadings").

**B. Diversity Jurisdiction**

Subject matter jurisdiction based on 28 U.S.C. § 1332 "requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014). In determining the existence of federal diversity jurisdiction, the court applies a "time-of-filing rule" that "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing--whether the challenge be brought

3

shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004); *see also BH99 Realty, LLC v. Qian Wen LL*, No. 10–CV–0693, 2011 WL 7091800, at *3 (E.D.N.Y. Oct. 24, 2011) ("[T]he well-established rule [is] that diversity of citizenship is assessed at the time the action is filed" (internal quotation marks and citation omitted)).

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile . . . [in other words] the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Companies, Inc.,* -- F.3d –, 2019 WL 3850584, at *3 (2d Cir. Aug. 16, 2019) (quoting *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000) (internal citation marks and citation omitted)). At any given moment, a person has only one domicile, though it may change. *Id.* One's domicile is established initially at birth and "is presumed to continue in the same place, absent sufficient evidence of a change." *Palazzo,* 232 F.3d at 42.

"Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy,* 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (citing *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 47-49, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989)), *aff'd*, 406 F. App'x 507 (2d Cir. 2010). Where there is evidence of more than one residence, or the residence is not clear, the court looks to the party's intent. *See Chen v. Sun,* No. 113CV00280, 2016 WL 270869, at *2 (S.D.N.Y. Jan. 21, 2016). A court "should not rely on self-serving declarations in evaluating where a party was domiciled for the purposes of diversity jurisdiction." *Shcherbakovskiy v. Seitz*, No. 03 CV 1220, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010). In addition to a party's statement, a court examining intent considers many factors including, *inter alia,* the party's

4

> current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes[,] whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) ... and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Kennedy,* 633 F. Supp. 2d at 81 (internal quotation marks and citations omitted). "No single factor is determinative, and courts must consider the 'totality of the evidence.'" *Id.* (quoting *Nat'l Artists Mgmt. Co. v. Weaving,* 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)). No minimum time period is required to establish domicile, and "although intent to remain in the state is a key element of demonstrating a change of domicile, the person need not have the affirmative intent to remain there permanently." *Hidalgo v. City of New York,* No. 14-cv-2282, 2015 WL 1729811, at *2 (S.D.N.Y. Apr. 14, 2015).

**B. Burden of Establishing Domicile**

It is well-settled that "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enter. Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178,189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)). The party asserting subject matter jurisdiction, in this case, Plaintiff, "bears the burden of showing a factual basis for jurisdiction by a preponderance of the evidence." *Astra Oil Trading NV v. PRSI Trading Co.,* No. 08 CIV. 10467, 2009 WL 928672, at *2 (S.D.N.Y. Apr. 6, 2009) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "When challenged on allegations of jurisdictional facts, the part[y] must support [his] allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010).

If a party argues that there has been a *change* in domicile, that party "implicates the venerable rule that '[w]here a change of domicile is alleged, the burden of proof results upon the party making the allegation.'" *Herrick Co. v. SCS Comm'ns, Inc.,* 251 F.3d 315, (2d Cir. 2001) (quoting *Desmare v. United States,* 93 U.S. (3 Otto) 605, 610, 23 L. Ed. 959 (1876)). A party alleging a change in domicile must prove the requisite "intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence." *Palazzo,* 232 F.3d at 42 (alteration in original, internal quotation marks and citation omitted).

The Second Circuit has explained how the evidentiary burden requirements are applied in situations in which they appear to be in tension with one another, instructing that "the party seeking to challenge diversity by alleging a change of domicile does not . . . bear the burden of proving that change if the party seeking to establish diversity has not carried its (prior) burden of establishing a specific initial domicile from which the change would be a departure." *Herrick Co.,* 251 F.3d at 324. In other words, the party asserting diversity jurisdiction must first establish his domicile and only then does the challenger assume the burden of proving that there has been a change in that situation. Application of a rule requiring a party to establish a change of domicile when there has been no proof of the original domicile serves only to "engag[e] the parties and the court in an uncertain effort to determine an unclear departure from an unknown beginning." *Id.* Accordingly, Finnegan bears the initial burden of demonstrating that his domicile was Vermont; if he successfully demonstrates by a preponderance of the evidence that he was domiciled in Vermont, then the Moving Defendants would assume the burden of showing a change of that domicile to New York.

6

With these standards in mind, the Court turns to the evidence regarding domicile placed before it by the parties.

## III. DISCUSSION

### A. Evidence Relating to Domicile

The facts set forth below are gleaned from the evidence provided on this motion including:

- The transcript of Finnegan's deposition ("Pl. Dep."), which took place over two sessions on June 28, 2018 and August 8, 2018. *See* Declaration of Kevin J. Stimpfli ("Stimpfli Decl."), Exs. C & D, DE [74-5], [74-6];

- Finnegan's responses to interrogatories ("Interrog. Resp."). *See* Stimpfli Decl., Ex. F, DE [74-8];

- Plaintiff's Declaration in Opposition to the motion. *See* Declaration of Sean Finnegan in Opposition ("Pl. Decl."), DE [75]; and

- Declaration from Jane Finnegan, Plaintiff's mother. *See* Declaration of Jane Finnegan ("J. Finnegan Decl.").

In addition to sworn testimony and affidavits, the Court has considered documentary evidence submitted by the parties as discussed, *infra*.

Finnegan was born in 1977 in Queens, NY. *See* Interrog. Resp. No. 1. He grew up in the house located at 80 Rochester Avenue, East Atlantic Beach, New York ("80 Rochester Ave., New York" or the "New York address").[1] Pl. Dep. at 144. In March 2006, he moved to Vermont, where he lived until 2013. *Id.* at 44, 299. In April 2006, he started working for Bouchard Steel Erectors, LLC ("Bouchard Steel"), a Vermont company. *Id.* at 44. Finnegan continued working for Bouchard Steel until February 2013. *Id.* at 34. In February 2013,

---

[1] Although the 80 Rochester Avenue street address is sometimes cited as being in Long Beach instead of East Atlantic Beach, *compare* Bank Statements, Pl. Decl. Ex. E (Long Beach) *with* Federal Tax Returns, Stimpfli Decl. Ex. E (East Atlantic Beach), there appears to be no dispute that these references are to the same residence owned by Plaintiff's mother.

7

Finnegan was involved in an accident in which he flipped a truck over and struck a utility pole, resulting in a suspension of his license and a guilty plea to DUI. *Id.* at 201-02. No other evidence has been submitted regarding Finnegan's first period of residence in Vermont.

In April 2013, Finnegan began working at Redgrave Electric Maintenance in Atlantic Beach, New York. Interrog. Resp. No. 11(g). Although he left Vermont, the current record is silent as to the location of his next residence. Finnegan continued to work for Redgrave in New York until May 2014. *Id.* From May 2014 until July 2015, Finnegan was self-employed doing house renovations in New York. Pl. Dep. at 243. Finnegan's federal tax returns for 2014 show his address as 80 Rochester Avenue, New York. *Id.* at 246; Stimplfli Ex. E. Finnegan believes he filed a New York State tax return for 2013 and stated that he definitely did so in 2014. Pl. Dep. at 300.

In July 2015, Finnegan started living in Vermont again, residing at 19 Rist Road, Wilmington, Vermont ("19 Rist Rd, Vermont" or the "Vermont address") in an apartment in a house owned by his aunt. Pl. Dep. at 16. Although he did not have a lease, he testified that he paid her $500 per month in rent. *Id.* at 17. Also in July 2015, he began to work again for Bouchard Steel. *Id.* at 31. His federal tax returns for 2015 and 2016 continued to show his address as 80 Rochester Ave., New York. *Id.* at 246; Stimpfli Decl. Ex. E. He is certain he filed a New York State tax return in 2015, but was not sure about 2016. Pl. Dep. at 300.

For some unspecified duration of time prior to the accident, he was dating a woman who lived in Long Beach and he came to New York on weekends to see her. Pl. Dep. at 289. He was visiting in New York on Labor Day weekend in 2016. The accident underlying this case occurred at approximately 3:00 a.m. on September 6, 2016 as Finnegan was leaving the New York address to go directly to a job site in Williamstown, Massachusetts. *Id.* at 51.

After the accident in September 2016 until August 1, 2017, Finnegan lived in a separate apartment within his mother's home at 80 Rochester Ave., New York.[2] From the accident until spring of 2017, Finnegan underwent surgeries and received medical treatments and physical therapy in New York. He joined a gym in Long Beach for the year of 2017. Pl. Dep. at 256. In May 2017, he returned to surfing for the first time since the accident. *Id.* at 213.

The complaint in this case was filed on July 26, 2017, at which point Finnegan was living at the New York address. On July 31, 2017, Finnegan and his girlfriend entered into a one-year lease for an apartment in Long Beach, New York, starting August 1, 2017. *See* Pl. Decl., Ex. F**.** He has remained in Long Beach from that time forward and confirms that his domicile is New York. Pl. Decl. ¶9.

Although he was not receiving a salary, Bouchard Steel carried Finnegan's health insurance after the accident in September 2016 and through 2017. Finnegan returned to work for Bouchard Steel on September 11, 2017. Pl. Dep. at 32. He left his employment with the company a short time later in January 2018, attributing the decision to an inability to drive long distances, and was subsequently employed by Freedom Iron Works in New York. *Id.* at 225.

---

[2] Evidence of whether Finnegan paid rent to his mother for his period of residence at her home varied by time and telling. At the first session of Plaintiff's deposition, he clearly stated that he paid rent to his mother beginning in September 2016 at the rate of $1000 a month. Pl. Dep. at 15**.** At the second deposition session, he stated that he did not start paying rent to his mother until September 2017 after he started work again. *Id.* at 311-12. In opposition to the instant motion, Plaintiff in his Declaration states that "a review of my records reveals that I never paid my mother any rent." Pl. Decl. ¶3 (emphasis supplied). He also submitted a declaration from his mother stating that "I did not charge, and my son did not pay, any rent to me for the period from September 2016 through and including July 31, 2017." J. Finnegan Decl., ¶4. Thus, there are three versions regarding payment of rent for his stay at 80 Rochester Avenue in New York: Finnegan (1) paid rent starting in September 2016; (2) started to pay rent in September 2017 (even though he was by then living with his girlfriend); or (3) never paid rent.

Plaintiff never returned to the apartment at 19 Rist Rd, Vermont, and told his aunt, at some unspecified time, that he would not be coming back. Pl. Dep. at 267. His last payment for rent at the Vermont address was made for the month of August 2016, the month prior to the accident. *Id.* at 17. When asked at his deposition in August 2018 if he had been back to Vermont since the accident, he responded "I don't know." *Id.* at 268.

In addition to the testimony and documents discussed above, Finnegan has submitted the following documents: (1) a Vermont driver's license showing the Vermont address and an expiration date of December 11, 2018, Pl. Decl. Ex. A; (2) Vermont motorcycle registration obtained in June 2016 and expiring on June 30, 2017 using the Vermont address, Pl. Decl. Ex. B; (3) Vermont Automobile Insurance Identification Cards from Progressive Insurance with Finnegan, no address indicated, as the named insured for (a) a motorcycle for the period of May 22, 2016 to May 22, 2017, and (b) a car for the period of March 10, 2017 to September 10, 2017, Pl. Decl. Ex. C; (4) a letter dated April 28, 2017 from BlueCross/BlueShield of Vermont to an attorney attaching a summary of benefits paid on Finnegan's behalf from September 6, 2016 to April 5, 2107 in the total amount of $110,521.33, which list includes 123 entries for providers in New York (119), Ohio (2), and Maine (2), Pl. Decl. Ex. D; (5) two bank statements from Community Bank N.A. in Wilmington, Vermont dated July 13, 2017 and August 11, 2017 and showing Finnegan's address as 80 Rochester Ave., New York, Pl. Decl. Ex. E; and (6) a lease for an apartment in Long Beach, New York for one year from August 1, 2017 to July 31, 2018 signed by Finnegan and Kellien Carey on July 31, 2017, Pl. Decl. Ex. F.

**B. Analysis**

It is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997) (citing *Leveraged Leasing*

*Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 47 (2d Cir. 1996)). Turning to the evidence presented, while Finnegan has shown that he resided in Vermont from time to time, he has failed to establish that his domicile was Vermont at any specific point or, as relevant to the determination of this motion, on July 26, 2017. Indeed, the lone domicile established by the facts presented is New York by virtue of Finnegan's birth in the state. The evidence regarding his first period of residency in Vermont is limited to the facts of its duration and that his employer at that time was located in the state.

Even assuming *arguendo* that Finnegan established domicile in Vermont at some point during his period of residency from 2006 to 2013, the evidence presented suggests that his domicile reverted to New York in 2013. He has not provided any evidence regarding the move in 2013 let alone evidence that would show he intended to return to Vermont. To the contrary, the evidence demonstrates that he lived and worked in New York, filed his federal tax returns using the New York address, filed New York state tax returns, and had one or more personal relationships with women residing in New York.

Plaintiff has proffered minimal evidence that would support a finding that, upon his return to Vermont in July 2015, he intended Vermont to be his domicile. With the exception of his reemployment by Bouchard Steel, there is no evidence regarding the circumstances or reasons behind Finnegan's 2015 return to Vermont. The mere fact that he restarted work for Bouchard Steel is not sufficient as "[a] change in residence for convenience in working conditions does not, without more, demonstrate a change in domicile." *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 CIV. 10333, 2006 WL 300477, at *2 (S.D.N.Y. Feb. 7, 2006) (residence change insufficient to establish domicile when balanced against other evidence such as voter registration, church membership, and location of spouse in another state). In

addition, employment by Bouchard Steel is not by itself not determinative of any need or intent to reside in Vermont since the work he performed for that company was often done outside that state. *See* Pl. Dep. at 39 (noting that he left Bouchard Steel in 2018 because it "requires travel all over the northeast"); *id.* at 40 ("with Bouchard I worked in Maine" eight hours away). On the day of the accident, he was not returning to work in Vermont, but rather was going directly to a jobsite in Williamstown, Massachusetts. Moreover, by the time he returned to work with Bouchard Steel in September 2017, he had entered into a year-long lease in Long Beach and admits to being domiciled in New York.

The strongest documentary proof of Finnegan's ties to Vermont is his driver's license issued by that state. The license itself, however, displays only an expiration date in December 2018 and bears no suggestion of the issuance date. Finnegan has provided no evidence regarding when he procured the license, and given his prior period of residency in the state, it is conceivable that it was issued earlier and thus would have no bearing on whether he intended to make Vermont his domicile in 2015. As to vehicle registrations, there is evidence that the motorcycle was registered and insured in Vermont in 2016, but no proof of registration of his car, for which he has provided an insurance card but no direct evidence regarding if, or when, that vehicle was registered in Vermont. Apparently, the car was registered in Vermont at some point in time since Finnegan in his declaration dated September 25, 2018 indicated that he considers himself a domiciliary of New York, "even though" his car "still has Vermont license plates." Pl. Decl. ¶9. As this statement demonstrates, Finnegan does not appear to be particularly vigilant about keeping his vehicle registration current, and therefore evidence of such registration in Vermont does not carry significant weight.

The fact that BlueCross/BlueShield of Vermont paid out medical claims is only evidence that Finnegan's medical insurance was provided by that insurer. He submits no proof or argument that the insurer required its insured to be domiciled within Vermont in order to be covered.

Other documents in the record also do little to support Finnegan's claim that he was domiciled in Vermont from 2015 to 2017. His tax returns, which he signed and verified, show the New York address.[3] The two bank statements he submitted also show the New York address. In addition, his place of residence upon his return to Vermont in 2015 does not suggest any permanency. He lived with a family member, paid low rent, and did not have a lease. The arrangement appears to have been on a month-to-month basis as he was able to terminate any obligation orally and effective immediately. There is also testimony that he returned to New York frequently to continue his romantic relationship with a New York resident.

Conspicuously absent from Finnegan's proffer is evidence from a wide range of sources that might have supported any claim to domicile in Vermont. While there is evidence in the record regarding medical providers related to Finnegan's post-accident treatment in New York, there is nothing to indicate he had sought medical or dental treatment with any Vermont practitioners from 2015 to 2016 that would support a finding of a Vermont domicile. In addition, he has not provided other relevant information or documents such as, *inter alia:* voting registration and voting records; state tax returns, particularly for Vermont; evidence of lawyers,

---

[3] Finnegan acknowledges that his federal tax returns indicate an address of 80 Rochester Ave. in New York, but notes that his aunt was his tax advisor and that the address was "not accurate" and that he actually "lost out because the Vermont State tax rate is less than the New York State tax rate." Pl. Decl. at ¶4. He goes so far as to muse that "[p]erhaps I should consider filing amended tax returns to reflect the fact that I was a Vermont resident both at the time of the incident [and] at the time this action was commenced." *Id.* There is no evidence that he ever took that step.

accountants or other professionals in Vermont; memberships in any religious or social groups in Vermont; and/or evidence of property ownership. In short, he has submitted next to no proof that Vermont was his true home to which he intended to return.

Finally, it is acknowledged that Finnegan claims that during the time he was recuperating at his mother's home, it was his "intention to move back to Vermont." Pl. Decl. ¶5, but that "I changed my mind as a result of the relationship I had at the time with my girlfriend" a relationship "which led me to sign the lease dated July 31, 2017." *Id.*[4] This testimony alone does not carry the day as "[a] party's own declarations concerning the identity of his domicile, particularly with regard to an intent to retain or establish one, as is true of any self-serving statement, are subject to judicial skepticism. As many federal courts have made clear, they are accorded little weight by the district judge when they are in conflict with the facts or a party's actual conduct." § 3612 The Requirement and Meaning of Citizenship—Determination of a Person's Domicile, Wright & Miller, 13E FED. PRAC. & PROC. JURIS. § 3612 (3d ed.); *see also Willis v. Westin Hotel Co.,* 651 F. Supp. 598, 601 (S.D.N.Y.1986) (a party's "subjective statements ... of intent to make [a particular jurisdiction] one's home, of course, cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent."); *Bevilaqua v. Bernstein,* 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986) ("[a] party's own statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent.").

Viewing Finnegan's self-serving statement of intent to reside permanently in Vermont with the requisite skepticism, and considering the totality of the evidence presented and

---

[4] Given the sequential language in these statements, Finnegan suggests that his intention to change domiciles occurred at some point *prior* to July 31, 2017.

Finnegan's course of conduct as set forth in that evidence, he has failed to demonstrate by a preponderance of the evidence that he was domiciled in Vermont on July 26, 2017. Accordingly, this Court lacks subject matter jurisdiction and the case must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss [74] is granted. The Clerk of the Court is directed to close the case.

**SO ORDERED**.

/s/
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
September 18, 2019